# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| SAMANTHA R. ROBERTS,    ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| v.    ) | Case No. 4:21-CV-01457-NCC |
| ) | |
| KILOLO KIJAKAZI,    ) | |
| Acting Commissioner of Social Security,    ) | |
| ) | |
| Defendant.    ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Samantha R. Roberts ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 15) and Defendant has filed a brief in support of the Commissioner's decision (Doc. 18).  The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 9).

## I.  PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on June 5, 2019 (Tr. 209-13).  Plaintiff was initially denied on November 1, 2019 (Tr. 66-89, 93-98).  She filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 99-115).  After a hearing, by decision dated March 2, 2021, the ALJ found Plaintiff not disabled (Tr. 7-26).  On October 20, 2021, the Appeals Council denied Plaintiff's request for review (Tr. 1-4).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on June 30, 2016, and that Plaintiff did not engage in substantial gainful activity during the period from her amended alleged onset date of February 27, 2015, through her date last insured of June 30, 2016 (Tr. 12).  The ALJ found Plaintiff had the severe impairment of unspecified migraines, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-14).  After careful consideration of the entire record, the ALJ determined Plaintiff had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she must avoid hazards such as unprotected heights and moving mechanical parts; she can never climb ladders, ropes, or scaffolds; and she should avoid extremes of cold and heat, strobe lights, and exposure to loud noise in the workplace (i.e., SCO noise intensity level 4 and above) (Tr. 14).  The ALJ found that Plaintiff was capable of performing past relevant work as an executive assistant/secretary (DOT # 201.362-030, sedentary exertion and skilled, with an SVP of 6) (Tr. 18).  Thus, the ALJ concluded that Plaintiff was not under a disability at any time from February 27, 2015, the amended alleged onset date, through June 30, 2016, the date last insured (Tr. 20).

## III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.

20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.  If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The

3

ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

### IV.  DISCUSSION

In her appeal of the Commissioner's decision, Plaintiff raises two issues. First, Plaintiff argues that the ALJ's finding that Plaintiff did not equal the severity of any listed impairment is

4

not supported by substantial evidence (Doc. 15 at 4). Second, Plaintiff argues that the RFC failed to include Plaintiff's need for absences from work due to her migraines (*id.* at 7). The Court addresses each argument as follows and ultimately finds that the ALJ's decision is supported by substantial evidence and should be affirmed.

### A. Listing

"[T]he listings were designed to operate as a presumption of disability that makes further inquiry unnecessary." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "Thus, if the ALJ determines at step three of the sequential analysis that a claimant has a listed impairment, the claimant 'must be held disabled, and the case is over.'" *Brown v. Colvin*, 825 F.3d 936, 939 (8th Cir. 2016) (quoting *Jones v. Barnhart*, 335 F.3d 697, 699 (8th Cir. 2003)).

"Merely being diagnosed with a condition named in a listing and meeting some of the criteria will not qualify a claimant for presumptive disability under the listing." *McCoy v. Astrue*, 648 F.3d 605, 611–12 (8th Cir. 2011). "An impairment that manifests only some of [the listing] criteria, no matter how severely, does not qualify." *Zebley*, 493 U.S. at 530. The listings "exclude claimants who have listed impairments in a form severe enough to preclude *substantial* gainful activity, but not quite severe enough to meet the listings level—that which would preclude *any* gainful activity." *Id.* at 534.

A plaintiff "bears the burden at step three of showing that his impairments meet or equal an impairment described in the listings." *Cronin v. Saul*, 945 F.3d 1062, 1066–67 (8th Cir. 2019). "To establish equivalency, a claimant must present medical findings equal in severity to all the criteria for the one, most similar, listed impairment." *Id.* at 1067.

Primary headache disorder is not listed in Appendix 1, but Social Security Ruling 19-4P explains that a primary headache disorder may medically equal a listing. 2019 WL 4169635, at

\*8 (Aug. 26, 2019).  The listing for Epilepsy, 11.02, is the most closely analogous listed impairment, and "[w]hile uncommon, a person with primary headache disorder may exhibit equivalent signs and limitations to those detailed in listing 11.02 (paragraph B or D for dyscognitive seizures) …."  *Id*.

In order to medically equal listing 11.02, the claimant must provide a detailed description of her headaches from someone, preferably a medical professional, who has observed one of her typical headaches.  40 C.F.R. § Pt. 404, Subpt. P, App. 1.  Both Paragraphs B and D require that the claimant experience headaches medically equivalent to "dyscognitive seizures," that is, seizures "characterized by alteration of consciousness without convulsions or loss of muscle control."  *Id*.  Paragraph B requires "[d]yscognitive seizures occurring at least once a week for at least three consecutive months despite adherence to prescribed treatment."  *Id*.  Paragraph D requires "[d]yscognitive seizures occurring at least once every two weeks for at least three consecutive months despite adherence to prescribed treatment, as well as a marked limitation in physical functioning; understanding, remembering or applying information; interacting with others; concentration, persistence, or pace; or adapting and managing oneself."  *Id*.

Here, the ALJ found that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 14).  The ALJ stated as follows:

> [T]he claimant does not equal the criteria of listings 11.02B or 11.02D because the descriptions of her headaches does [sic] not suggest that they are analogous to dyscognitive seizures, which are characterized by alteration of consciousness, during which blank staring, a change of facial expression, and/or automatisms may occur (11.00H1a). The record as a whole does not demonstrate that the claimant's headache disorder met or medically equaled any listing prior to her date last insured.

(Tr. 14).

6

As a threshold matter, Plaintiff argues that the ALJ's statement indicates the ALJ improperly placed emphasis on the actual symptoms of epilepsy, as opposed to whether Plaintiff's symptoms were equivalent in severity (Doc. 15 at 4-5).  The Court disagrees.  In using the word "analogous," the ALJ conducted an appropriate equivalence analysis.

Plaintiff primarily argues that the record evidence of her migraines was sufficient to satisfy equivalence with the epilepsy listing (Doc. 15 at 5-6).  The relevant disability period is February 27, 2015 to June 30, 2016.  While Plaintiff was diagnosed with menstrual migraines and intractable migraines without aura, those disorders were first noted in 2017 (Tr. 600-02, 778-79).  Plaintiff's only diagnosis as of the relevant disability period was "migraine not intractable," first noted in 2008 (Tr. 778).  *Cf. Nail v. Kijakazi*, No. 4:20 CV 1422 CDP, 2022 WL 832328, at *7 (E.D. Mo. Mar. 21, 2022) (reversing equivalence determination where the plaintiff had diagnoses of vestibular migraine and chronic migraine).

As of February 27, 2015, Plaintiff was using Excedrin to treat her migraines (Tr. 893).  As of March 2, 2015, Plaintiff reported that the severity of her pain was 4/10 at its worst and that the typical duration of an individual headache was six hours (Tr. 891, 1113).  Her degree of functional impairment is identified as "moderate" (*id.*).  She started having headaches six years prior and had seen a neurologist in the past but he retired (*id.*).  She reported that the headaches started again in the past several months and followed the same pattern they had in the past (*id.*).  Zomig seemed to help best in the past (*id.*).  Plaintiff was prescribed Zomig (Tr. 892, 1115).  Plaintiff was also referred to the Mercy Clinic Headache Center but they did not take her insurance and she was referred to neurology (Tr. 890-91).  On March 7, 2015, Plaintiff reported a migraine

7

lasting eight days in a row and that her medication was not making it go away, and was advised to go to the ER if necessary (Tr. 890).  On March 9, 2015, she reported that her headaches on Friday and Saturday were not as bad as on Sunday and that she did not have a headache at all yesterday (*id.*).  On March 11, 2015, she was advised that if she was unable to see any neurologist to call and get another referral (Tr. 1116).

On November 21, 2015, Plaintiff reported she started to have headaches and/or migraines again and requested Zomig (Tr. 882-83).  On November 23, 2015, Plaintiff reported that Zomig works best for her as it takes 20-30 minutes to be effective versus an hour and a half with other medications (Tr. 882).  On January 11, 2016, Plaintiff requested more Zomig but denied having a headache at that time (Tr. 880-82, 1121-23).  Her degree of functional impairment is identified as "moderate" (Tr. 880, 1121).  As of January 15, 2016, Plaintiff reported having a migraine for eight days straight (Tr. 879), despite denying any headache on January 11.  On January 19, 2016, Plaintiff requested more Zomig (Tr. 877-78, 1124-25).  Her degree of functional impairment is identified as "moderate" (Tr. 877, 1124).

On May 10, 2016, Plaintiff requested and received a referral to endocrinology for "thyroid and menstrual migraines/hormonal imbalances" (Tr. 870-71).  On June 10, 2016, Plaintiff called about headaches (Tr. 866).  On June 16, 2016, Plaintiff reported she was having a lot of migraines lately and was told she could take a larger dose of Zomig (Tr. 865).  On June 23, 2016, Plaintiff called with issues about insurance coverage of the Zomig (*id.*).  On June 24, 2016, Plaintiff called crying and upset due to migraine pain and not having any medication available (*id.*).  She was advised to go to the ER if necessary (*id.*).  On June 28, 2016, Plaintiff reported having migraines since June 18 when her

8

period started, and requested more medication (Tr. 863). On June 29, 2016, Plaintiff again reported a migraine since June 18 and requested more medication, but was "ok for today-so far" (*id.*).

There is no indication in Plaintiff's medical records from the relevant disability period that Plaintiff experienced headaches medically equivalent to dyscognitive seizures, much less that such headaches occurred once a week or once every two weeks for a consecutive three months, as required by Paragraphs B and D respectively. This is not the "uncommon" case where a person with primary headache disorder exhibits equivalent signs and limitations to those detailed in the epilepsy listing. The Court finds no error in the ALJ's determination that Plaintiff's unspecified migraines did not medically equal the epilepsy listing.

### B. RFC

Plaintiff argues that the RFC failed to include Plaintiff's need for absences from work due to her migraines (Doc. 15 at 7). As set forth above, during the relevant disability period, Plaintiff identified her migraines as a 4/10 pain at their worst and her functional impairment is consistently identified as moderate. Plaintiff was prescribed Zomig as needed, with permission to increase her dose in June of 2016. While she occasionally had trouble accessing it, the Zomig seemed to provide some control of her symptoms as it had done in the past. Plaintiff did not progress to more aggressive treatments like Botox and, despite being advised to go to the ER if necessary, she had no ER visits related to her migraines. *Cf. Hess v. Colvin*, No. 4:14CV1593 CDP, 2015 WL 5568056, at *1, *13 (E.D. Mo. Sept. 22, 2015) (remanding in part because ALJ did not incorporate migraine difficulties into RFC where Plaintiff had history of ER visits due to

9

migraines). While she reported migraines lasting eight or more days, some medical evidence undermines those claims and there is no indication in Plaintiff's medical records that the severity of her migraines was sufficient to necessitate absences. In addition, Plaintiff worked as a stay-at-home mom and started her own vintage rentals business during the relevant disability period (Tr. 870-71). The Court finds no error in the ALJ's failure to include a need for absences in the RFC.

## V. CONCLUSION

For the foregoing reasons, the Court finds that substantial evidence on the record as a whole supports the Commissioner's decision that Plaintiff is not disabled.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED, with prejudice**.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 16th day of March, 2023.

                                      /s/ Noelle C. Collins
                                      NOELLE C. COLLINS
                                      UNITED STATES MAGISTRATE JUDGE